IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PERSONACARE OF READING, INC., d/b/a KINDRED TRANSITIONAL CARE AND REHABILITATION - WYOMISSING, <br><br> Plaintiff, <br><br> v. <br><br> KATHRYN M. LENGEL and THERESA A. QUITINSKY, and as co-Executrixes of the Estate of MARY KATHRYN QUITINSKY, <br><br> Defendants. | CIVIL ACTION <br><br> NO. 16-1965 |

**MEMORANDUM OPINION**

**Schmehl, J.**  /s/ JLS                                                                 June 27 , 2017

Before the Court is the Motion to Compel of Plaintiff, Personacare of Reading, Inc., d/b/a Kindred Transitional Care and Rehabilitation-Wyomissing ("Plaintiff"), which Defendants, Kathryn M. Lengel and Theresa A. Quitinsky, and as co-Executrixes of the Estate of Mary Kathryn Quitinsky ("Defendants") have opposed. After a review of the briefs and accompanying exhibits of all parties, and for the reasons discussed below, I will grant Plaintiff's Motion to Compel Arbitration, order the survival claims in the state court matter to proceed to arbitration, and stay the pending state court proceedings.

**I.      BACKGROUND**

Defendants' mother, the deceased Mary Kathryn Quitinsky, was a resident of Plaintiff's skilled nursing facility located in Reading, Pennsylvania. (*See* Complaint.) Defendants in this matter filed a claim for nursing home negligence against Plaintiff in the Court of Common Pleas of Berks County. Plaintiff then instituted the present action, seeking to have Defendants' state court action compelled to arbitration pursuant to an

arbitration agreement signed as part of Ms. Quitinsky's admission to Plaintiff's facility. (Docket No. 2, Exh. K.) Defendants opposed this motion, claiming that the ADR agreement cannot be enforced as written, is based upon fraud, is unconscionable and is voidable.

## II. DISCUSSION

### A. Standard of review

A motion to compel arbitration may be resolved at the pleadings stage without the benefit of any discovery if "it is apparent, based on 'the face of [the petition], and documents relied upon in the [petition],' that certain of a party's claims 'are subject to an enforceable arbitration clause.' . . ." Guidotti v. Legal Helpers Debt Resolution, LLC, 716 F.3d 764, 776 (3d Cir. 2013) (*citing* Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F.Supp.2d 474, 482 (E.D. Pa. 2011)). If a "complaint and its supporting documents are unclear regarding the agreement to arbitrate," a motion to compel should be denied without prejudice to allow limited discovery on the issue of arbitrability. Id. If the agreement to arbitrate is facially valid, an opposing party must present "reliable evidence . . . 'that it did not intend to be bound' by the arbitration agreement. . . " Id. at 774 (quoting Par-Knit Mills Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 55 (3d Cir. 1980)). If a motion to compel is denied without prejudice and discovery is permitted, a party may renew the motion after discovery, and the court will review it under a summary judgment standard. Id. at 776.

Determining the validity of an ADR agreement requires two steps. First, a court must determine whether a valid agreement to arbitrate exists; if the ADR agreement is enforceable, courts then decide whether the issues contained in the complaint fall within

2

the scope of the agreement. Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005).

### B. ADR Agreement

The agreement in question was signed by Theresa Quitinsky on behalf of her mother as her mother's "Legal Representative." (See Exh. K, p. 4.) The agreement states that it is entered into between "Kindred Nursing Centers East, LLC d/b/a 1237-Kindred Transitional Care and Rehabilitation – Wyomissing, a nursing home in the Commonwealth of Pennsylvania (hereinafter referred to as the "Facility") and M. Kathryn Quitinsky, a Resident at the Facility (hereinafter referred to as the "Resident.") The term Facility as used in this Agreement shall refer to the nursing home, its employees, agents, officers, directors, affiliates and any parent or subsidiary of the Facility." (See Exh. K, p. 1.) The ADR agreement contains the following language:

> **Voluntary Agreement to Participate in ADR**. The Parties agree that any disputes covered by this Agreement ("Covered Disputes") that may arise between the Parties shall be resolved exclusively by an Alternative Dispute Resolution process that shall include mediation and, where mediation is not successful, binding arbitration. The relief available to the Parties under this Agreement shall not exceed that which otherwise would be available to them in a court action based on the same facts and legal theories under applicable federal, state or local law.
>
> **THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT BY ENTERING INTO THIS AGREEMENT THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED BY A COURT OF LAW OR TO APPEAL ANY DECISION OR AWARD OF DAMAGES RESULTING FROM THE ALTERNATIVE DISPUTE RESOLUTION PROCESS EXCEPT AS PROVIDED HEREIN.**

(See Exh. K, p. 1) (emphasis in original). Regarding "Covered Disputes," the Agreement further states:

> This Agreement applies to any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Facility that would constitute a legally cognizable cause of action in a court of law sitting in the Commonwealth of Pennsylvania. Covered disputes include, but are not limited to all claims in law or equity arising from one Party's failure to satisfy a financial obligation to the other Party; a violation of the right claimed to exist under federal, stae, or local law or contractual agreement between the Parties; tort; breach of contract; fraud; misrepresentation; negligence; gross negligence; malpractice; death or wrongful death and any alleged departure from any applicable federal, state, or local medical, health care, consumer, or safety standards.

See Exh. K, p. 2. Lastly, the Agreement states that "**THIS AGREEMENT IS NOT A CONDITION OF ADMISSION OR CONTINUED RESIDENCE IN THE CENTER**." (See Exh. K, p. 1) (emphasis in original).

### C. Validity of the Agreement

First, Defendants argue that because their wrongful death claims cannot be compelled to arbitration but their survival claims can, the ADR Agreement cannot be enforced as it is written, since it claims to cover "all disputes" between the parties. It is undisputed that Defendants' wrongful death claims under Pennsylvania law cannot be compelled to arbitration. See Pisano v. Extendicare Homes, Inc., 77 A.3d 651, 661 (Pa.Super.Ct. 2013) (finding that wrongful death claims cannot be compelled to arbitration because the wrongful death beneficiaries did not sign the ADR Agreement). In fact, Plaintiff specifically states it does not seek to compel the arbitration of these wrongful death claims contained in the state court complaint. (See Docket No. 2, p. 14.) Defendants argue that by attempting to bifurcate the underlying lawsuit into two different forums, Plaintiff is contravening the terms of its own contract, which states that "The ADR Agreement is a written agreement between Mrs. Quitinsky and Kindred-Wyomissing pursuant to which all disputes between them concerning [her] residency at

Kindred-Wyomissing must be submitted to arbitration." (Docket No. 2, p. 7.) The ADR agreement further states that "all claims based in whole or in part on the same incident, transaction, or related course of care or services provided by the Facility shall be addressed in a single arbitral process." (Exh. K.)

I find this argument to be unpersuasive, as the Supreme Court of Pennsylvania recently upheld the very process to which Defendants are objecting in <u>Taylor v. Extendicare Health Facilities, Inc.</u>, 146 A.3d 490 (Pa. 2016), <u>cert. denied</u>, 137 S.Ct. 1375, 197 L.Ed.2d 555 (2017). In <u>Taylor</u>, the Court found that the trial court should have granted defendant nursing home's motion to bifurcate the wrongful death and survival claims and should have compelled arbitration of the survival claim pursuant to an arbitration agreement and the Federal Arbitration Act. <u>Id.</u> As the Pennsylvania Supreme Court in <u>Taylor</u> upheld the very bifurcation process that Defendants claim makes the ADR Agreement unenforceable, I reject this argument. The mere fact that the agreement states "all disputes" should be submitted to arbitration, and wrongful death claims, by operation of Pennsylvania law, cannot be arbitrated, is insufficient to create an unenforceable agreement.

Defendants strongly state that the ADR Agreement includes "speed, efficiency and cost-effectiveness" as the purpose of the contract, and claims that bifurcating the proceedings would frustrate the purpose of the agreement. (Docket No. 17, pp. 10-11.) Defendants claim enforcing the ADR Agreement would not effectuate the stated intent of the parties in entering into the contract. However, the <u>Taylor</u> court stated:

> the [Federal Arbitration Act]'s objectives are to ensure the enforcement of arbitration agreements and facilitate streamlined proceedings. Arbitration of a single claim under the facts presented herein, with multiple plaintiffs and defendants and several causes of action remaining in state court, likely

5

> will not lower costs or enhance efficiency. Therefore, the scenario that we are addressing arguably presents a conflict between the two objectives of the FAA, where enforcing the ADR Agreement between Decedent and Extendicare will satisfy the enforcement objective at the expense of efficiency. Under such circumstances, we are bound by the Supreme Court's directive to favor enforcement over efficiency. See Moses H. Cone, 460 U.S. at 20, 103 S.Ct. 927; Dean Witter, 470 U.S. at 217, 105 S.Ct. 1238; KPMG, 132 S.Ct. at 24. The Supreme Court has made clear that bifurcation and piecemeal litigation is the tribute that must be paid to Congressional intent. Dean Witter, 470 U.S. at 217, 105 S.Ct. 1238.

147 A.3d at 510. The Taylor court clearly recognized that this type of bifurcation might not always be the most efficient method of handling a proceeding, but found that enforcement of an agreed upon ADR clause trumped efficiency. Therefore, bifurcation of the issues in this matter would not frustrate the purpose of the agreement, and the ADR Agreement must be enforced.[1]

Next, Defendants argue the ADR Agreement is unenforceable because it is based on fraud due to the fact that the ADR Agreement and Plaintiff's ADR Rules of Procedure "designate DJS Administrative Services, Inc., as the default administrator of Kindred's ADR proceedings." (Docket No. 17, p. 4.) Defendants claim that "Kindred created and controlled DJS as part of an elaborate, behind-the-scenes effort to avoid liability in personal injury actions arising out of Kindred's pre-dispute arbitration agreements." Id. Specifically, Defendants argue that DJS was created at the behest of Kindred, that Kindred provided DJS with documents to be used and that Kindred hand-picked the mediators and arbitrators to be used in DJS-administered ADR proceedings. (Id., pp. 4-6.)

The ADR Agreement states:

---

[1] I note that if Defendants are concerned about the ADR Agreement's requirement that all disputes should be addressed in a single arbitral process, nothing is preventing them from agreeing to have their wrongful death claims heard by the arbitrators along with the survival claims.

> ADR under this Agreement shall be conducted by a Mediator or Arbitrator (both also are referred to as the "Neutral") and administered by an independent, impartial entity that is regularly engaged in providing mediation and arbitration services (hereinafter the "Administrator"). The Administrator **may** be DJS Administrative Services, Inc. . . . **If the Parties choose not to select DJS** or if DJS is unwilling or unable to serve as the Administrator, the Parties shall select another independent and impartial entity that is regularly engaged in providing mediation and arbitration services to serve as Administrator.

(Exh. K, p. 2) (emphasis added).

It is important to note that DJS itself does not arbitrate any of the claims against Kindred. Rather, DJS merely schedules mediations and arbitrations. Further, a review of the ADR Agreement quoted above demonstrates that parties are not required to use DJS as the Administrator. Rather, the ADR Agreement provides that DJS "may" be the Administrator, but allows for the circumstance in which "the Parties choose not to select DJS." In addition, Defendants have presented no evidence to show that Plaintiff has any sort of control over the pool of potential arbitrators that would be available to Defendants. Therefore, I find that the use of DJS does not result in an unconscionable contract. This is the same result recently reached by other courts when interpreting the same ADR Agreement. See Gullett on behalf of Gullett v. Kindred Nursing Centers W., LLC, 390 P.3d 378, 385 (Ariz. Ct. App. 2017) (affirming the decision to enforce the ADR agreement and holding that Kindred's procedure for selecting an arbitrator is not fundamentally unfair, and, thus, not unconscionable because the agreement does not require DJS Services to be the administrator of the arbitration); Preferred Care, Inc., v. Belcher, 2015 WL 1481537, at *9 (E.D. Ky. Mar. 31, 2015) (upholding the decision to enforce the ADR agreement and rejecting the argument that the designation of DJS as administrator renders the ADR agreement unconscionable); But see Warhola v.

Extendicare, Inc., No. GD-15-020246 (C.P. Allegheny, Dec. 19, 2016) (Wettick, J.) (striking down the same ADR Agreement as procedurally and substantively unconscionable under Pennsylvania law, finding that the "Arbitration Program upon which defendants rely is run by defendants.") (Docket No. 17, Exh. H).

In summary, there is nothing to indicate that this ADR Agreement is unfair, unconscionable, or unenforceable. Accordingly, I find that the ADR Agreement is valid.[2] Accordingly, Defendants' survival claims contained in the state court complaint must be submitted to arbitration.[3]

**III.     CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Compel Arbitration is granted and Counts I and IV of the state court complaint underlying this matter shall proceed to arbitration. Further, the state court action related to this matter is stayed pending the outcome of the arbitration.

---

[2] Once I determined that the ADR Agreement is valid and enforceable, I must move to the second step and decide whether the issues contained in the state court complaint fall within the scope of the agreement. Defendants have failed to argue that the survival claims do not fall within the scope of the ADR Agreement, and a review of the Agreement shows that they clearly do. The Agreement is broad and encompasses "any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Facility." Clearly, claims for negligence on the part of Defendants fall within the scope of the Agreement.

[3] Defendants asked, in the alternative, for a period of discovery as to the enforceability of the ADR Agreement. I find that "it is apparent, based on 'the face of [the petition], and documents relied upon in the [petition],' that certain of [Defendants'] claims 'are subject to an enforceable arbitration clause'. . ." Guidotti, 716 F.3d at 776. Therefore, no period of discovery is necessary and Defendants' request is denied.